UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 06-147-EBA

RICHARD BLANKENSHIP,                                                 PLAINTIFF,

V.                          **OPINION AND ORDER**

LEWIS COUNTY FISCAL COURT,                             DEFENDANT.

\*   \*   \*   \*   \*   \*   \*

This matter is before the Court on Defendant's Motion for Summary Judgment. [R. 19.] Fully briefed, the matter is ripe for review. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

FACTUAL BACKGROUND

The Plaintiff, Richard Blankenship [Blankenship] applied for, but was denied, a permit to collect and haul away waste generated by the residents of Lewis County, Kentucky. In December of 2003, the Lewis County Fiscal Court adopted Ordinance No. 2003-008 [R. 19, Exh. 3], establishing the requirement that any person or business wishing to provide waste hauling services within the county obtain a permit from the county government to do so. The ordinance set forth the standards by which permits would be granted and the rules under which the program would operate. Permits are obtained from the "Lewis County Judge Executive or his designee." [Id.]

In 2006, Blankenship organized a business and obtained from the Kentucky Transportation Cabinet "a municipal solid waste transportation license to operate municipal solid waste transportation vehicles between all points and places in Kentucky." [R. 20, at 1.] That same year,

Blankenship sought, several times, a permit from the Lewis County Judge Executive. Each of his requests were denied, on the grounds that permitting additional waste hauling businesses to operate in Lewis County would create too much competition for the existing seven businesses providing that service to the community. [R. 19, at 11.] These seven businesses had been granted permits by the fiscal court at the time Ordinance 2003-008 was adopted:

> The Solid Waste Advisory Committe[e] has reported to the Solid Waste Coordinator and County Judge Executive that the seven (7) currently permitted collector/haulers have the capacity and ability to effectively provide for solid waste collection to all residents of Lewis County. There shall initially be seven collector/haulers authorized by and permitted at the time of the adoption of this Ordinance. Said persons shall continue to hold said permits, subject however, to all requirements of this Ordinance and the provisions of any previously adopted Ordinance which provisions are not inconsistent herewith.

[R. 19, Exh. 3 at 4.]

On the basis of the denial of a permit by the Lewis County Judge Executive, Blankenship filed suit against the Lewis County Fiscal Court in Lewis County Circuit Court in July 2006. [R. 20, at 2.] In his complaint [R. 1, Exh. 3], and subsequent "more definite statement" [R. 1, Exh. 4], Blankenship makes several claims: (1) the decision to limit the number of waste haulers to seven is arbitrary and capricious; (2) that enactment of the ordinance was done without notice and in violation of state law requiring that a bid process be followed; (3) that the ordinance is void on its face in that no criteria were defined to support the decision to grant permits to the seven aforementioned waste haulers; (4) that the denial of a permit violated his equal protection rights under the state and federal constitutions; (5) denial of a permit has prevented him from earning a living; (6) the failure to take bids on waste hauling permits violated his due process rights under the state and federal constitutions; and (7) that the actions of the county government amount to "outrageous conduct."

[R. 20, at 2-3.]

Blankenship's case was removed to this Court on October 26, 2006. [R. 1.] Defendant's Motion for Summary Judgment was filed June 21, 2007. [R. 19.]  In that motion, Defendant argues that Blankenship's claims are barred by the doctrine of sovereign immunity, a state statute granting immunity to local governments and that, in the alternative, all of his claims fail on the merits. [R. 19.] Blankenship responds in part that the actions at issue, taken by the County Judge Executive, were ministerial in nature, and thus are not protected by sovereign immunity. [R. 21.]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

While the court must view all facts in the light most favorable to the non-moving party and give him or her the benefit of all reasonable inferences that can be drawn from the facts, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the non-moving party cannot avoid summary judgment merely by resting on the pleadings, see Celotex, 477 U.S. at 324. Instead, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In other words, "the nonmoving party must present 'significant probative evidence' to show that 'there is [more

than] some metaphysical doubt as to the material facts.'" Dixon v. Gonzales, 2007 WL 750532 (6th Cir. 2007) (citing Moore v. Phillip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993)). Thus, where the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 586-87.

Additionally, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." In re Morris, 260 F.3d 654, 665 (6th Cir. 2001).

## ARGUMENT

### A. State Law Claims

Blankenship makes several claims surrounding the adoption of Ordinance No. 2003-008 and the administration of the permit process outlined therein. As a result of those actions, Blankenship claims, his rights under the Kentucky and United States Constitutions were violated. [R. 1.] Defendant argues that all of Plaintiff's state law claims are barred by the doctrine of sovereign immunity, citing state case law and specifically relying on K.R.S. § 65.2003, which states in part:

> Notwithstanding K.R.S. 65.2001, a local government shall not be liable for injuries or losses resulting from: . . .
> (3) Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:
> (a) the adoption or failure to adopt any ordinance, resolution, order, regulation or rule; . . .
> (c) the issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization. . . .

4

> Nothing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties.

Blankenship argues in response that sovereign immunity does not apply, as the actions at issue were ministerial in nature and thus not protected by the doctrine. As the Defendant correctly states, this argument may have been persuasive had Blankenship named individuals, such as the members of the fiscal court or the county judge executive, as defendants. In the instant case, Blankenship names only the Lewis County Fiscal Court as a defendant. The Lewis County Fiscal Court was the only defendant named when the action was first filed in state court and this posture of the case has endured after removal. [R. 1.] At no point has Blankenship sought to amend his complaint and, as the Defendant notes, the deadline to do so passed on April 30, 2007.

The Defendant has established that the Lewis County Fiscal Court is afforded the immunity set forth in K.R.S. § 65.2003. See, Schwindel v. Meade County, 113 S.W.3d 159, 163 (Ky. 2003). This holding has been applied by the Sixth Circuit Court of Appeals, in an unpublished opinion, to a case with a posture similar to the instant case. Doe v. Magoffin County Fiscal Court, 174 Fed. Appx. 962, 971 (6th Cir. 2006). In Doe, the Court held that: "Sovereign immunity bars state-law actions against county governments. Kentucky courts have treated fiscal courts as county governments and thus have permitted fiscal courts to share sovereign immunity with county governments. Unless the fiscal court waives its immunity, sovereign immunity protects the fiscal court from state-law claims." Id. Blankenship cannot maintain an action for his state law claims, including his argument that fiscal court members should have followed the bidding process required by § 164 of the Kentucky Constitution, without having named parties who are capable of performing ministerial acts. As a result, Blankenship's claims of 'arbitrary and capricious" actions, outrageous

5

conduct, failure to follow the bid process, and the extent to which any of these actions violated the Kentucky Constitution or state law, are barred by the doctrine of sovereign immunity.

B. Federal Claims

The claims that remain are those involving the Equal Protection and Due Process clauses of the United States Constitution. Plaintiff's pleadings make it unclear under what authority he brings his claims. The Court notes his references to "constitutional rights" and being denied "equal protection of the law" and "due process of law." [R. 19, Exh. 5.] Unfortunately, Plaintiff's arguments delve no deeper into a cause of action under these theories than the cursory statements referenced above, citing no statutes or case law applicable to a *federal* cause of action. Defendant argues that these claims fail because no genuine issues of material fact exist to support them going forward. [R. 19.] This Court must, therefore, determine what cause of action the Plaintiff is asserting.

Any claim against local officials for violations of due process and equal protection must stem from the Fourteenth Amendment to the United States Constitution, which provides that, "[no] State shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. However, the Fourteenth Amendment does not provide a direct cause of action. The Supreme Court's decision in Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) made the need for a direct cause of action under the Fourteenth Amendment unnecessary, as explained by the Second Circuit in a case handed down in the wake of Monell:

> An important element in our [previous] decision to imply a damages remedy against municipalities under the 14th Amendment, however, was that Congress had not supplied a vehicle by which the right in question could be vindicated. [Turpin v.

> Mailet, 579 F.2d 152, 157 (2d. Cir. 1978) (en banc)].
>
> Monell held that § 1983 suits may be brought against municipalities under conditions essentially coextensive with those we imposed on the private right of action in Turpin. We therefore conclude that under the very rationale of our prior opinion there is no place for a cause of action against a municipality directly under the 14th Amendment, because the Plaintiff may proceed against the City of West Haven under § 1983.

Turpin v. Mailet, 591 F.2d 426, 427 (2d. Cir. 1979) (en banc).

The Sixth Circuit has followed the rationale set forth in Turpin, holding that "[t]he Supreme Court has never recognized a cause of action arising directly under the Constitution in a case where [42 U.S.C.] § 1983 was available as a remedy." Thomas v. Shipka, 818 F.2d 496, 500 (6th Cir. 1987), *vacated on other grounds*, 488 U.S. 1036 (1989). The Shipka panel elaborated as follows:

> we conclude that it is unnecessary and needlessly redundant to imply a cause of action arising directly under the Constitution where Congress has already provided a statutory remedy of equal effectiveness through which the plaintiff could have vindicated her constitutional rights.

Id. It is clear from the case law that if the Plaintiff desires to bring a cause of action against the Lewis County Fiscal Court under the Fourteenth Amendment, he must plead 42 U.S.C. § 1983 [hereinafter "Section 1983"].[1]

An examination of the pleadings shows that the Plaintiff did not specifically plead Section 1983. However, the Federal Rules of Civil Procedure state that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). In accordance with this mandate, this Court will interpret the

---

[1] Other circuits agree with the proposition set forth in Turpin and Shipka that the Fourteenth Amendment does not create a direct cause of action against municipalities. See, e.g., Hughes v. Bedsole, 48 F.3d 1376, 1383, n.6 (4th Cir. 1995); Wax'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001).

7

Plaintiff's federal constitutional claims as arising under Section 1983. This Court's decision to construe the claims as arising under Section 1983 is consistent with the approach generally taken in the Sixth Circuit. See, e.g., Shumaker v. Ypsilanti Police Dept., 98 F.3d 1342 (6th Cir. 1996) (table); Sanders v. Prentice-Hall Corp., 178 F.3d 1296 (6th Cir. 1999) (table); Stepp v. Bowles, 2007 WL 3046479 (W.D. Ky. 2007) (slip copy). In the present action, the Plaintiff included both costs and attorney's fees in his prayer for relief, [R. 1], both of which were specifically made available under Section 1983. See, Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 901-902 (6th Cir. 2003). The Plaintiff's Memorandum in Opposition to Motion for Summary Judgment [R. 20] also cites Buckley v. Fitzsimmons, 509 U.S. 259 (1993), a United States Supreme Court case involving Section 1983. Given that Section 1983 is the only vehicle through which a plaintiff might acquire such relief, and the trend in the Sixth Circuit of doing so, Plaintiff's claim is construed to be brought under Section 1983. The Court also notes that a liberal construction of the complaint does not adversely impact the Defendant, since they have addressed the merits of the constitutional arguments in their dispositive motion. See, Pierzynowski v. Police Dept. City of Detroit, 941 F. Supp. 633, 639 (E.D. Mich. 1996).

    C. Analysis of Plaintiff's Claims Under 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, the Lewis County Fiscal Court would be considered a municipality and thus subject to its provisions. Monell, 436 U.S. at 691. The Supreme Court has addressed directly the status of county governments in federal causes of action brought against them under this statute:

> By its terms, the protection afforded by [the Eleventh Amendment] is only available to "one of the United States." It is true, of course, that some agencies exercising state power have been permitted to invoke the Amendment in order to protect the state

>treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself. But the Court has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a "slice of state power."

Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 400-401 (1979). See also Northern Ins. Co. v. Chatham County, 547 U.S. 189 (2006). Thus, for purposes of Plaintiff's federal law claims, the Lewis County Fiscal Court would not benefit from the protections of sovereign immunity.

### 1. Policy or Custom

In an action brought under Section 1983, a plaintiff cannot rely on a theory of *Respondeat superior*. Monell, 436 U.S. at 691; Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). The Supreme Court has held that, in order to hold a municipality liable for a constitutional violation, a plaintiff must prove that the "execution of the government's policy or custom . . . inflicts the injury." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

It is clear from a review of the record that Plaintiff's alleged injuries stem, if at all, from the ordinance passed by the Lewis County Fiscal Court, the implementation of that ordinance by the county judge-executive or solid waste coordinator, or both. It was the ordinance that required the acquisition of a permit prior to any citizen engaging in the business of waste hauling. It was the ordinance that set the initial number of waste haulers at seven, and granted permits to the seven waste hauling businesses that had been operating in the county prior to passage of the ordinance. Section Four of the ordinance directs anyone seeking a permit to do so through "the Lewis County Judge Executive or his designee." [R. 19, Exh. 3 at 3.] The ordinance creates a grievance procedure and directs that it be administered by the county judge-executive. [R. 19, Exh. 3 at 4.] Finally, the

ordinance authorizes the solid waste coordinator "to set forth and promulgate written rules and regulations as deemed appropriate..." [R. 19, Exh. 3 at 7.] Having determined that Plaintiff's claims do stem from a policy adopted by the Defendant, we move to a discussion of the merits of Plaintiff's federal constitutional claims.

    2. Due Process Claim

The Plaintiff asserts that his due process rights were violated because he was not extended an opportunity to bid and participate in the awarding of waste hauling permits. [R. 20]. Specifically, the Plaintiff claims that the Defendant's failure to follow Kentucky's bid requirements deprived the Plaintiff of the ability to earn money as a waste hauler. The Defendant counters that the Plaintiff had no property interest that would entitle him to due process protection under the U.S. Constitution. [R. 19 at 14-16].

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. The courts, using the clear text of the Amendment, follow a two-part test to determine whether there has been a due process violation: (1) "[whether] the interest at stake is within the Fourteenth Amendment's protection of liberty and property..."; (2) "...[whether] such interest was abridged without appropriate process." Arnett v. Myers, 281 F.3d 552, 564-65 (6th Cir. 2002). Thus, to recover in the present case, the Plaintiff must first show that his interest in the government contract is either a protected life,[2] liberty or property interest; only then can he assert that he was deprived of that interest without sufficient process. It should be noted that the Plaintiff bears the burden of proving that he has an

---

[2] There is clearly no "life" interest at stake in this case. See, Cruzan v. Missouri Dept. of Health, 497 U.S. 261 (1990).

interest that is protected by due process. See Experimental Holdings, Inc. v. Farris, 503 F.3d 514 (6th Cir. 2007).

### a. Liberty Interest

In the context of due process, the Plaintiff's claim that he was deprived of his "right to earn a living" sounds similar to an argument regarding a "liberty" interest. Liberty interests traditionally involve, for example, freedom from bodily restraint or, "an injury to a person's reputation, good name, honor or integrity." See, e.g., Ludwig v. Bd. of Trustees of Ferris State Univ., 123 F.3d 404, 410 (6th Cir. 1997). Plaintiff's allegations in the present case merely involve the government's failure to issue a license or permit, with no attendant claim of damage to his reputation or honor. Cases without such specified allegations, even where there are claims of bias or prejudice are typically considered to involve a potential property, rather than liberty, interest. See, e.g., Clarkco Landfill Co. v. Clark County Solid Waste Mgmt. Dist., 110 F. Supp. 2d. 627 (S.D. Ohio 1999).

### b. Property Interest

Property interests are "created and defined by independent sources, such as state law." Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 538 (1985). To have a protected "property" interest, a person must have more than a "unilateral expectation," he must have a "legitimate claim of entitlement" to a benefit. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). The Plaintiff presents a reasonable argument that the permits should have been subject to Kentucky's bid procedures. See BFI Waste Systems of N. Am., Inc. v. Huntington Woods Neighborhood Ass'n, Inc., 134 S.W.3d 624 (Ky. App. 2003); Eastern Ky. Res. v. Arnett, 934 S.W.2d 270 (Ky. 1996).

However, even if the bid process should have been utilized, the failure to do so does not automatically result in a federal due process violation. The Plaintiff must show that he has a property

interest, independent of the bid process itself, because it is clear from the case law that "[a] government body's failure to follow a given procedure does not [by itself] create a property right." Ferencz v. Hairston, 119 F.3d 1244, 1248 (6th Cir. 1997).

The Sixth Circuit has held that a claimant can establish a "constitutionally-protected property interest in a publically bid contract" in two ways: "[a] bidder can show that it actually was awarded the contract and then deprived of it, or that, under state law, the County had limited discretion, which it abused, in awarding the contract." TriHealth Inc. v. Bd. of Comm'rs, Hamilton County, Ohio, 430 F.3d 783, 792 (6th Cir. 2005). This analysis is used when someone actually bids on a contract, or as in TriHealth, where it is alleged that there was a failure to follow required bid procedures. See also, United of Omaha Life Ins. v. Solomon, 960 F.2d 31 (6th Cir. 1992) (per curiam); TriHealth, Inc. v. Bd. of Comm'rs, 347 F. Supp. 2d 548 (S.D. Ohio, 2004).

It is apparent that the Plaintiff was never awarded a permit, so the only way he could have a protected property interest is if the County's discretion to award the permit was limited by law. An examination of the Lewis County Fiscal Court ordinance shows that the Solid Waste Coordinator retained broad discretion to issue or deny permits:

> Section 8.1. The Solid Waste Coordinator is authorized to set forth and promulgate written rules and regulations as deemed appropriate, in order to assure the appropriate operation of the solid waste collection and disposal process in Lewis County. The Solid Waste Coordinator *shall have the authority to limit the annual number of permits issued* in order to preserve the health, comfort, safety and welfare of the residents, to promote energy conservation and to provide for collection and disposal consistent with desirable solid waste management practices.

[R. 19, Attach. 2, p. 7] (emphasis added).

The italicized language of the ordinance indicates that the Solid Waste Coordinator has the discretion to reject an application for a permit. It should be noted that Section 164 of the Kentucky

Constitution also leaves too much discretion to provide a property interest, as it states that a municipality "shall have the right to reject any or all bids" regarding the granting of "any franchise or privilege." Ky. Const. § 164.

The Plaintiff fails to cite any statute that is sufficiently definite to give him a property interest in the waste hauling permit. The Plaintiff's due process claim fails because of his failure to show entitlement to the permit itself. As the Sixth Circuit has stated, "a party's unilateral desire for a particular government permit is not a property interest." Clarkco Landfill, 110 F. Supp. 2d. at 634.

Though it may seem odd that a violation of the bid requirements would not rise to the level of a due process violation, this result is absolutely consistent with the general rule that a Plaintiff "can have no protected property interest in the procedure itself." Richardson v. Twp. of Brady, 218 F.3d 508, 518 (6th Cir. 2000).[3]

> Recognition of the fact that the violation of a law is not, ipso facto, a deprivation of due process to all persons affected thereby is fundamental to an understanding of procedural due process. The due process clause is a narrow, personalized guarantee which only protects against the deprivation of one's own liberty and property; it is not a catch-all provision designed to promote the interest of society generally in the obedience of its laws.

TriHealth, Inc. v. Bd. of Comm'rs, 347 F. Supp. 2d 548, 558 (S.D. Ohio, 2004). The Sixth Circuit has very recently elaborated on this issue in the case of Experimental Holdings, Inc. v. Farris, 503 F.3d 514 (6th Cir. 2007), which involved a conflict over bidding requirements for a county real estate lease:

> Indeed, if state law *procedural* protections were sufficient to create federally protected property interests, then every state law procedural violation would be a

---

[3] See also, Kim Constr. v. Bd. of Trustees of the Vill. of Mundelein, 14 F.3d 1243, 1246 (7th Cir. 1994) ("In the absence of an underlying property interest, the Due Process Clause does not require states to obey their own procedural rules in awarding municipal contracts.").

13

>potential federal case. This case, for instance, appears to revolve entirely around the content of Kentucky law concerning government bidding. Federal law is hardly cited by the parties, and the mere words 'abuse of discretion' are not sufficient to turn a state procedural violation into a federal due process case. Otherwise, most state review-of-administrative-action cases would be potential federal cases.

Id. at 520 (emphasis in original).

From this review, it is clear that Section 1983 "is limited to deprivations of federal statutory and constitutional rights. It does not cover official conduct that allegedly violates state law." Huron Valley Hosp., Inc. v. City of Pontiac, 887 F.2d 710, 714 (6th Cir. 1989). Even if this Court assumed, *arguendo*, that Section 164 of the Kentucky Constitution required the Defendant to engage in the bid process, Section 1983 "does not cover state constitutional violations that are not also federal constitutional deprivations." Id. The Plaintiff's due process claim must be rejected, as he has failed to show that he has a "property" interest that is protected by the Due Process Clause of the Fourteenth Amendment.

### 3. Equal Protection Claim

As discussed above, Plaintiff presents very little in terms of developing his claim that the actions of the Lewis County Fiscal Court denied him his equal protection rights under the United States Constitution. A review of the record, including Plaintiff's complaint, the clarification of said complaint that he was ordered to provide, and his response to Defendant's motion for summary judgment, reveal only one paragraph concerning his federal equal protection claim:

>[T]he Plaintiff has been denied equal protection of the law, in that other waste haulers have been granted a privilege which has been denied to the Plaintiff, for no reason. The Plaintiff has the same right to operate a waste hauling business in Lewis County, Kentucky as do the other seven waste haulers, and to deny him this privilege and opportunity to make a living is flatly unfounded.

[R. 1, Exh. 4 at 2.] Plaintiff's primary defense on this issue is contained in his response to Defendant's summary judgment motion. However, Plaintiff only refers cryptically to "constitutional rights," never distinguishing between his rights under the Kentucky and United States constitutions and citing exclusively Kentucky state law in support of his claim.[4] [R. 20.]

Defendant argues that, while the Plaintiff has a general right to earn a living, that right is subject to reasonable regulation of the employment area chosen by the Plaintiff. Defendant defends its decision to limit the number of waste haulers, and deny Plaintiff a permit, by arguing its judgments were made in the course of achieving a legitimate government purpose; namely, the proper collection and disposal of solid waste generated by its citizens. While Plaintiff makes several arguments that may have been intended to support a federal equal protection claim, he either makes them in the context of the Kentucky Constitution, or the arguments cannot be applied to the party he chose to bring his claim against.

As noted above, once a party has been challenged on a summary judgment basis, that party cannot rely exclusively on the pleadings, but must come forward with something more by way of facts and legal argumentation. See Celotex, 477 U.S. at 324; Matsushita, 475 U.S. at 586-87. Plaintiff did not do this as it concerns his equal protection claim, and thus the Court is obliged to grant summary judgment to the Defendants on this matter.

## CONCLUSION

Accordingly, and for the reasons set forth above, the Court ORDERS THAT:

    (1)    Defendant's Motion for Summary Judgment [R. 19] is GRANTED.

---

[4] Plaintiff, in his response to Defendant's summary judgment motion [R. 20], does cite one federal case, Buckley v. Fitzsimmons, 113 S. Ct. 2606 (1993), but that citation was on the issue of sovereign immunity. Plaintiff has provided the Court no other citations to federal authority in his pleadings.

  (2)  Plaintiff's claims are DISMISSED with prejudice.

  (3)  This matter be STRICKEN from the Court's docket.

  (4)  There being no just cause for delay, this is a FINAL and APPEALABLE Order.

Signed December 17, 2007.

Signed By:
*Edward B. Atkins*   *EBA*
United States Magistrate Judge